**FULLER, Appellant, v. EVATT, TAX COMMR., Appellee.**

Board of Tax Appeals.

No. 7310. Decided July 6, 1945.

442

Marshall, Melhorn, Wall and Bloch, Toledo, for appellant.
Hugh S. Jenkins, Atty. Genl., and Aubrey A. Wendt, Asst.
Atty. Genl., Columbus, for appellant.

## ENTRY

This cause came on to be heard upon an appeal of Katharine G. Fuller from additional intangible personal property tax assessments made against her by the tax commissioner for the years 1940 and 1941. Said cause was heard and submitted on the transcript of the proceedings before the tax commissioner, the evidence and briefs of counsel.

The assessments complained of were made on the basis of payments the appellant received during the years 1939 and 1940 from the trustees in pursuance of Item IX of the will of her husband, Rathbun Fuller. Item IX of said will reads in part as follows:

"From the Trust property my said executors and/or trustees shall distribute and pay to my beloved wife, Katharine G. Fuller, **an annuity of Twenty-four Thousand ($24,000.00) Dollars per annum, in monthly or quarterly installments as she may wish, so long as she lives, said annuity to be paid out of the net income and/or principal of the Trust Property**—this annuity to accrue from the date of my death and the first payments hereunder to be paid one month after my death and monthly thereafter unless my said wife directs the same be paid quarterly. This annuity shall be paid to my said wife in addition to all other payments to her under this Will.

"If in any year the net income from this trust estate exceeds the annuity sum of Twenty-four Thousand ($24,000.00) Dollars, then my said executors and/or trustees shall, at her request in writing, pay to my said wife such additional net income. (Emphasis suppled.)"

In 1939 appellant received from the income of said trust estate the sum of $60,580.57. For the year 1940 the tax commissioner, after deducting expenses and income from nontaxable sources, determined the total amount of net income from taxable sources to be $50,250.76 and assessed the entire amount thereof at its income yield resulting from an equitable interest in a fund made up in whole or in part of investments; whereas the appellant in her return for 1940, deducted therefrom the sum of $24,000.00 and listed this amount as an annuity. Likewise for the year 1941, the tax commissioner assessed the entire amount of net income from taxable sources, to wit, $43,563.72, in the same way; while the appellant listed $24,000.00 thereof as an annuity. This action of the tax commissioner resulted in the additional assessments complained of.

The question, therefore, is whether the payments of $24,000.00 per year which were actually made only from the income of the estate under the above provisions of said will, constitute an annuity or whether they result from an equitable interest in a fund made up in whole or in part of investments.

The Board refers to the following Ohio cases involving personal property taxes. In the case of **Wetmore v State, 18 Ohio 77**, it was held:

"A sum of money certain, to be received annually, and at stated periods, is, within the meaning of the tax law of 1846, an annuity, unless the same be receivable as a pension, a salary, or as compensation for labor or services, subsequently to be performed."

In that case the payments were not made under the will. The will provided for the payment of the interest from the estate to the beneficiary, the interest to be paid to her annually. Instead of taking in accordance with this provision of the will, the beneficiary agreed with the executors of the will and the other beneficiaries, that she should receive $12,300.12 in a lump sum which, together with additional

moneys realized as the proceeds of property passing to her under another will, was used to purchase an annuity of $1800.00 per year; which annual payments were apparently made by the obligor from interest received on the moneys placed in the hands of such obligor by or on behalf of Mrs. Wetmore. It was the payments received by her under the annuity contract which were taxed as an annuity. There was, therefore, a definite personal obligation created upon the seller of the annuity to pay periodical payments, which were not to be paid from any particular source. Furthermore, the statute levied a tax upon "every annuity or sum of money receivable at stated periods" with certain exceptions. With reference to this provision, the court said:

"In this proviso we are told what are not annuities within the meaning of the law. Placing this provision in juxtaposition with that part of the preceding paragraph which it is intended to qualify, it will stand thus: 'Every annuity or sum of money receivable at stated periods; Provided that pensions received from the United States or any of them, salaries or payments expected to be received for labor or services to be performed or rendered, shall not be held to be annuities, within the meaning of this act.' Such being the language used by the law-making power upon this subject, we cannot doubt that it was the intention to include within the terms or words annuity, every sum of money receivable at stated periods, except such as are excluded or excepted by the proviso. * * *"

The statute there involved was entirely different from our present statutes and, therefore, the Board finds that case does not apply to the present case.

In the case of **Chisholm v Shields, Treas., 67 Oh St 374,** 66 N. E. 93, the syllabus reads as follows:

"A husband gave a legacy to his wife in his will as follows:

" 'And I further give and bequeath to her, my said wife, in lieu of all dower the sum of eight thousand ($8,000.00) dollars annually, for and during the term of her natural life, and I hereby direct my executors to pay this legacy to my said wife in equal quarterly installments from the day of my death. * * * I desire to have my last will and testament carried out in the following manner, to-wit: For the payment

of my wife's legacy, I desire that a sufficient amount of my personal estate, either of stocks, bonds, or money, shall be used to purchase government bonds, or equally good bonds of such an amount that the interest thereon shall be sufficient to pay the quarterly installments of two thousand ($2,000.00) dollars, and that the same shall be paid to her promptly upon the very day they shall fall due.'

"Held: That such legacy does not constitute an annuity under our tax statutes, and that no part of said legacy is taxable against the widow until after the same shall be received by her."

The Court said in its opinion:

"An annuity, as understood in common parlance, is an obligation by a person or company to pay to the annuitant a certain sum of money at stated times during life or a specified number of years, in consideration of a gross sum paid for such obligation, and this in substance is the kind of annuity covered by said sections of the statute."

The Court further said:

"The legacy grows out of the estate each quarter, and on failure of sufficient interest, part of the principal may be taken, but even that part adheres to the estate, grows out of it, cannot be separated therefrom before payment to the widow, and payment cannot be made out of any other fund. The estate is, therefore, a trust fund in the hands of the executors for the payment of the quarterly installments of her legacy. It is a case of trustee and beneficiary, and not debtor and creditor. Neither is it an annuity; and to hold it to be such by construction, is to give the will a character which it has not, and take from it a character which it clearly has. This cannot be done."

In the case of **Bosworth v Tax Commission, 21 O O 240,** 6 Ohio Supp. 340, it was held:

"Payments made pursuant to an antenuptial agreement providing that a stipulated sum be paid each month to the surviving widow for her life, are taxable under §5389 GC, as an annuity."

Here again a personal obligation was created to pay money periodically. In the opinion his Honor, Bell, J., said:

"Counsel for the commission contend that these payments are not an annuity but the proceeds of a trust. There is no evidence to support such contention.

"An annuity may be thus defined:

" ' The payment of a certain sum of money at stated times, annually, semi-annually or monthly granted to another in fee or for life or for years and charging the person of the grantor only.'

"An annuity differs from a trust in that in an annuity the grantor is solely responsible for the payments, whereas in a trust the res is solely responsible for the payments."

The same rule appears to have been applied in the case of Commonwealth v Beisel, 338 Pa. 519, 13 Atl. (2d) 519.

The unreported case of Mather v Filiere decided by the Court of Appeals of Wood County November 18, 1940, Docket No. 663, is directly in point. In that case the taxpayer executed an irrevocable declaration of trust which contained this provision:

"Commencing with the 30th day of September, 1927, and so long as Donor shall live, the Trustee shall pay to her from the income and/or principal of the Trust Property an annuity of Four Thousand ($4,000.00) Dollars per month."

The court in this case modified—and in effect reversed—a decision and judgment of the Common Pleas Court of said county which reversed an order of the Tax Commission of Ohio which sustained a tax assessment on said periodical payments of four thousand dollars ($4,000.00) per month as the income yield of and with respect to the taxpayer's beneficial interest in the corpus of this trust; and the Court of Appeals held that to the extent that said monthly payments were made out of the income of the trust they were taxable as income yield on a trust interest, and not as an annuity. A motion by the taxpayer to certify the record in this case was overruled by the Supreme Court on January 22, 1941, Docket No. 28441.

It is true that the term "annuity" in its broadest sense

may include almost any kind of provision for the periodical payment of money. The question here, however, is the meaning of that term as used in our taxing statutes. **Sec. 5328-1 GC,** which is the declaratory statute with respect to the taxation of intangible personal property, provides, among other things, for the taxation of "investments". **Sec. 5323 GC,** in defining "investments", includes the following with reference to annuities:

"Annuities, royalties and other contractual obligations for the periodical payment of money and all contractual and other incorporeal rights of a pecuniary nature whatever from which income is or may be derived, however evidenced * * *"

**Sec. 5388 GC,** provides:

"In listing investments, the amount of the income yield of each for the calendar year next preceding the date of listing shall, excepting as otherwise provided in this chapter, be stated in dollars and cents and the assessment thereof shall be in the amount of such income yield."

Assessments are taxed at the rate of five per centum of such ascertained and determined income yield. **Sec. 5638 GC. Sec. 5389 GC,** reads in part as follows:

" 'Income yield' as used in §5388 GC, and elsewhere in this title means the aggregate amount paid as income by the obligor, trustee or other source of payment to the owner or owners, or holder or holders of an investment, whether including the taxpayer or not, during such year, and includes the following:
"* * * in the case of annuities or other obligations for periodical installment payments including both principal and interest, not separately charged and paid, four per centum of half the principal used to purchase the same, or, if there be no such principal, or the annuity or obligation was purchased and payments made thereunder prior to January 1, 1933, four per centum of half of the present worth of such annuity or periodical installment payments if com-

muted, which shall be calculated, as of the date on which such investment is required by this chapter to be first listed, with interest at four per centum per annum and, in the case of annuities for life or lives, according to the combined annuity four per cent table; * *. *"

It is seen that §5323 GC, refers to annuities and **other contractual obligations** for the periodical payment of money; and §5389 GC, refers to. annuities or **other obligations** for periodical installment payments. Obviously, the above noted provisions of §5389 GC, must be read in harmony with those of §5323 GC; and in determining the intention of the legislature as to the meaning of the term "annuities", as used in §5323 GC, regard must be given to the words "other" and "other contractual obligations". As to this it must be assumed that the legislature had some reason for using these words and that the same should not be treated as meaningless or as surplusage. It is well settled that in the construction of statutes one of the cardinal rules is that effect is to be given, if possible, to every word used by the legislature. **State ex rel. Brownell v Industrial Commission, 131 Oh St 124;** In re Opinion of the Justices, 275 Mass. 575, 578, 175 N. E. 644. So considered, the language used by the legislature in the enactment of §§5323 and 5389 GC, indicate the legislative intent that the "annuities" that are taxable as such and as "investments" are only such as answer the description of the language of these sections; which, practically speaking, would be such annuities as answer the definition of the term made in the decision of the Supreme Court of this state in the case of Chisholm v Shields, Treas., supra.

The Board of Tax Appeals is of the opinion that where a will such as that in this case, provides that the executors or trustees are to make periodical payments to a named beneficiary from trust property, which payments have been made from the income thereof, such payments do not constitute an annuity within the meaning of §§5323 and 5389 GC, but that such payments were properly considered as income yield of and with respect to the appellant beneficiary's interest in the investments making up the corpus of the trust fund; and the tax commissioner did not err in making the tax assessments here in question on that basis.

It is, therefore, by the Board of Tax Appeals considered and ordered that the final tax assessment order of the tax commissioner herein complained of be, and the same hereby is, affirmed.